The bankruptcy court ruled in favor of the appellees on the basis that the court was bound by the state court ruling on fraud and could not revisit damages. In doing so, the bankruptcy court noted that it was uneasy with the damages because they didn't think that the plaintiff was damaged at all. The issue that the appellants take exception with is the ruling that the collateral estoppel on fraud ended the inquiry and ignored the central issue which the appellants raised. That's critical here because on appeal, we're not challenging the fraud finding per se, the damages per se. That would all be barred under the Rooker-Feldman doctrine, but that's not being challenged. The central point of our objection before the state court was whether the plaintiffs, appellees in this case, received any money, property, services, extension of credit in exchange for or in relation to the fraud. In this case, that clearly wasn't the case. So the bankruptcy court in appellant's position was that the court erred in not going one determination in the preamble to 523A2 without going into the subsections that it was with respect to money, property, services, and an extension or renewal of credit. I think it's important to point out with respect to congressional intent, fraud's found four or five times within section 523. Not all fraud claims are non-dischargeable under 523. If Congress wanted to make fraud generally non-dischargeable, they could have just put two words in 523A2, a debt for fraud. They didn't do that. There's pretty specific requirements in A2, and more specifically, some of the other provisions require a more general approach to fraud, such as fraud with respect to taxes is non-dischargeable. Fraud in connection with securities is non-dischargeable. But when it comes to fraud generally... Mr. Barsky, I'm sitting here and I'm actually sort of perplexed. So we have a judgment that includes, for example, an attorney's fees award. Are you conceding that the attorney's fees would have been properly collected under California law on a fraud claim? I am not, Your Honor, but I don't think I have the right to challenge that on appeal. Okay. The central part of my inquiry was that the court had to go one step further and make a finding that the defendants received money, property, services in connection with any fraud. We certainly disagree with the attorney's fees finding, et cetera, et cetera, but I don't know if I can challenge that. Well, you either do or you don't. It's not my job to tell you if you can, but under California law, you're benefited by having three California judges and my colleagues can disagree with me, but I don't see any way you get attorney's fees based on fraud under that judgment. And it seems to inject ambiguity into it that you don't seem to see. No, I do agree that there's ambiguity. I mean, I think some of the problems that I raised before the trial court with respect to the damages in general was the fact that there was actually no, I mean, even the bankruptcy court found that she didn't, Judge Martin didn't think that there was actual damages. That's certainly something I raised to her. But I think the stronger point that needs to be raised and remanded on appeal is that there was no specific finding. So even under 523- Can I see if I'm following you? Sure. What I think you're saying is there could maybe there is a kind of fraud that would, for example, tell them, you know, maybe tell them by not saying anything by omission that, you know, there's no such asset. Maybe that's a kind of fraud, but that's not 523-A-2. Is that what you're saying? That the state court could have found that, although there are no findings here, that could have been a determination under state law, but it just wouldn't translate to A-2. Is that is that the notion? Yeah, I think that's that's one way of saying it, Your Honor. I think there has to be a showing that the fraud that the plaintiff, the defendant, obtained money, property or services in relation to the fraud. In this case, there wasn't. The money and property were obtained in 2013 and 2000. There was no induced. It wasn't a fraud in the inducements, is what you're saying, right? Correct. I mean, there's still a problem out there. It was a plebis fraud in the inducements, right? At the state court level. That's correct. That's correct. There is there is a general, more unspecified fraud allegation made in 2016 with a surrender of the collateral. So in this case, the central part of my argument is that the bankruptcy court, even if they were even if Judge Martin found that they were bound by Rooker-Feldman, full faith and credit, collateral estoppel on the fraud finding, they still had to go. Judge Martin still had to go one step further and make a finding for money, property, services or an extension renewal of credit that my clients obtained as a result of this fraud. That can't be done because, A, the facts don't support it. And that was never a specific element of the California fraud charge. That language is specific to the bankruptcy code. And it has to be it has to be found. I would argue I would submit to the court that it has to be found by a federal bankruptcy judge. In the majority of cases, the obtaining money, property, services, etc. is just a foregone conclusion. If you look at the talent case, the Ninth Circuit case cited in our brief, that was a foregone conclusion. The defendant received $250,000 in exchange for not disclosing something on his balance sheet. So those determinations are rarely analyzed because they don't need to be analyzed. But when it is raised and when it is in a circumstance where the one percent like here where it goes to default and there's no finding, allegation, specific fact, none of that regarding my clients obtaining any property or receiving anything of value, the court can't find. Well, let me ask you let me ask you a different question because I'm really perplexed by the argument. So if this was a standalone complaint, one cause of action, fraud, and we know the elements of fraud under California law and clean judgment that says fraud, which we don't have here, and there's no appeal, you still think the judge wouldn't be entitled to apply issue preclusion? It would, the judge would still have to make a finding under the general intro of A2 that the defendants received money, property, or services, or at least cite to something on the state court record that would support that finding, which is not present in this case. Okay, because there's a bucket of cases that says California fraud and A2 fraud are the same thing, which is a problem. Isn't the bigger issue here, you know, well, here the problem for me is it's a multi-factor complaint, you know, and so are you confident that the state court issued a fraud judgment? Are you conceding that point? I'm not. That was my first argument. Again, if the court recalls, we had two oral arguments and two issues raised on this. My first concern and primary concern has always been that I don't know how you can read into this judgment that the judgment is solely predicated on fraud. I mean, to me, at least being an Arizona attorney, the fact that there was attorney's fees included in this judgment speaks to contract and not tort or fraud. So that was certainly... That is a question for your opposing counsel. That's certainly a question. But go ahead. Sure, and that was certainly the central issue that we raised. But, you know, next we went one step further and I asked the court to find that, hey, there was a specific receipt of value from the plaintiffs to the defendant in this surrender of collateral. And the court clearly can't make that because the defendants were the ones in possession of the property. They never received anything of value. The value came back in 2013 and 2014. So that doesn't fit within the confines of the statute and case law. And I will acknowledge, your honors, that most of the cases just focus on fraud. But I think that's because the underlying facts in those cases are clear that there was an exchange of value of money in relation to the representation or in most cases, because it's such a simple proposition. But in this case, there was nothing of value received by the defendants. Mike, can I ask you, are you essentially saying this would be akin to a defalcation? In the sense that there was supposed to be $90,000 and there wasn't? And that that's a different question from whether your clients, you know, received or retained anything? I realize you're not, you would not concede you're a fiduciary and I don't think you should. But are you suggesting this is more like that? It's sort of a failure to account in a sense, as opposed to I'm holding something, right? I'm taking something I shouldn't have taken. I agree with you, Judge Lafferty. I think that's how it should have been played. I don't agree that there was necessarily a defalcation. But breach of fiduciary duty was never raised in the state court. Yeah, but that's I mean, that's, that's an analogy. I mean, that makes sense in light of what you're arguing, right? That the legal theory, if the facts supported it, would be fiduciary duty, which weren't weren't necessarily pled. And so that being the case, what I would ask the court to do is to remand this case, requesting that the bankruptcy court make an express finding that the defendants received money, property, services, or an extension of credit in exchange in relation to the fraud, which the bankruptcy court can't do. I think that's a central bankruptcy question. I don't think that language mirrors anything under California state law or general common law generally. And I think that's a necessary prerequisite that the trial court has to do here. And I will agree with Judge Taylor. I did raise the issues of damages of the contract damages and how that can be affirmed that the court necessarily decided the matter with, with the state court. And again, it was a pretty convoluted matter because it was a six count complaint. And the way that the judgment was drawn up in California was pretty hard to discern how that could be necessarily predicated on fraud. But I think the cleaner argument is that the bank, the trial court has to make a finding that the defendants in this case obtained value of some sorts in relation to the alleged misstatements that the plaintiff alleges in this case. Right. Well, you probably want to reserve the rest of your time for rebuttal. So we will let you do so. All right. Mr. Horner. Good morning, Your Honors. And I'm glad we have a California panel. It makes it a little bit easier on our part. More harder. True. Well, the first thing that I think is going on here is a misunderstanding of how floor plan contracts work. This isn't a floor plan contract, Mr. Horner. I'm burdened with having represented floor plan lenders before I went on the bench. This isn't even close to a floor plan contract. There was no unless there's something in the record I've missed, which is possible. Where was there an obligation on the part of the entity to transfer to your client the proceeds of each bow and arrow when sold? Target, whatever else you sell in an archery related business. Good point. It's like a floor plan because the money was loaned to this business to buy inventory. That's inventory finances. I mean, you're trying to make this a sale out of trust situation. And I want you to show me a specific contract in the record that requires it. As I read it, what they were obligated to do was sell stuff and then every, you know, what quarter make an interest only payment until a balloon at the end. They had free, the free right to use the collateral. I mean, I can contractually if they missed the payments, that's a breach of contract. I get it. But floor plan financing? Oh my, I just don't see it. Well, the fact is, there was a UCC1 file with the Secretary of State, which would perfect their lien on this inventory, a floating lien, if you will. That's a different question, I think. Okay. Maybe I misunderstood your question then. My point is they sold property that was mortgaged. But they were entitled to, they're operating a business. I mean, you know, that's a retail business. You sell bows and arrows and whatever. Again, I don't know what you sell in an archery business other than bows, arrows, targets. Maybe there's some sort of clothing. I don't know. So they sell those things. They pay their expenses and they have an obligation to make payments. It's not like a car dealership where when they sell the car, they're contractually obligated to pay off a specific amount directly to you at that time. That's a sale out of trust. That's flooring financing. This, you know, if under your scenario, every business is committing fraud because I'm, you know, because they give a lien on their assets and they don't immediately turn the proceeds over to the lender. That just isn't the way it works. Well, the case is if you've got mortgage property that you've sold, you should turn the money over according to the security grant. But as Josh Taylor pointed out, there was no immediate obligation to do that, right? I mean, this is interest only until the end. At the end of the day, though, the merchandise, which was mortgaged, should still be there or replaced. The floating lien, obviously you're going to sell a bow and arrow, you're going to buy another one. Well, the floating lien would encumber that. But when you sell... Well, the parties had every chance to write it that way. They didn't do it. Well, I was at their state court counsel. I agree. It would have been written a little bit differently than if we had at it. But the point is, there was multiple allegations, as the court points out, and fraud was one of them. The fact is, as the bankruptcy court pointed out, the only way you could connect the dots on fraud here is the amount of damages that were awarded. And it was the precise amount of damages for fraud in the prayer that were awarded. But that's the important point, isn't it? You had, you know, because I will give you that, you know, and I will give him, I don't understand how that state court complaint and how those fraud damages were calculated. But at the end of this complaint, which has all sorts of different theories and all sorts of different numbers, the recovery was limited to that, what was it, $123,400. So under California law, that was the max they could recover, right? Well, it's damages, but there's still court costs and attorney's fees over and above. Right. Okay. But bear with me. So the max they could get in damages, net of interest costs and attorney's fees, is $123,400. But is it not possible under that complaint you had a hundred and some thousand, $106,000 that was your breach of contract damages, and you also had a negligent misrepresentation claim that was another $29,000. That accumulates more than $123,000, but the court could have ruled on those two, still could not award more than $123,400, correct? That's my understanding. Right. Right. That's what the damages were for fraud. That's not the question I'm asking. I'm sorry. I'm asking, doesn't the complaint's prayer limit the recovery, and doesn't that inject ambiguity into the award, because the bankruptcy judge said the only thing that could work is the fraud award. Why couldn't the state court have done what the easy thing, which is $106,000 and negligence, put them together and say, well, that accumulates more than $123,400, but I'm capped? Well, I don't know, Your Honor, the answer to that. I do know it was a default case. And so the question is, was this well-pled or not, because well-pled facts are admitted. And in California, as you know, they're determined to have been tried on the merits, even though it's a default case. Maybe to put a fine point on, go ahead. It has to be necessarily decided. And that's what we're really struggling with here is, was it necessary to get to that number that the state court awarded damages based only on fraud, which is the only way you get a fraud? And I'm struggling with that, because as I just did the math, I can say I can see some other ways. And then we get to that attorney's fees and interest and how that had been awarded based on fraud. Let me respond. First of all, when you have a multiple count complaint, as we have here, negligence and contract and fraud and you name it, even if one count is sufficient, then the judgment is valid. This is the Hunt case, Supreme Court case that we cited from 1858, which is still good law. But that's a different question. Here we're applying issue preclusion. So nobody's questioning that your client has that judgment. Nobody's seeking to set aside that judgment. We're trying to take that judgment, or you're trying to take that judgment, into this non-dischargeability world. To do that, we have to give it preclusive effect. And if it's ambiguous, we can't. And ambiguity is charged against you. So that's the challenge. Well, I would suggest it's not ambiguous, because the amount of damages awarded were exactly what was pled in the fraud part. The court disregarded all of the other breach of contract and common count and what have you. But I think that the other— But did the court say fraud? Is there any place where the court said, I'm awarding this based on fraud? There is not. That's in the Judicial Council form that says, here's what your damages are, and down the line. It would have been most helpful if we'd had a minute entry, findings of fact. You're right. But we don't. So we're kind of—like tort victims, we take them as we find them. And that's what we've got here. But the other part of your question I've not yet addressed, Judge Taylor, is, well, how in the world do you get attorney's fees on a fraud judgment? Because it's not contractual. And in California, as you know, if one side is contracted to get attorney's fees and the other does reciprocally, in Arizona, everybody gets attorney's fees on contracts, whether it's requested or not. But your point is, back in California, how do you get attorney's fees on a fraud judgment? Well, on page 14 of our brief, we have invited the court's attention to the civil codes that essentially say a fraud victim is to be made whole, completely. And that doesn't include attorney's fees. So it's our position. No. No. Well, that's our position. Okay. So let's tease that out. Judge Lafferty and I, between us, I think we're getting—and yeah, Judge Brandon, I know we're going to have 100 years of California law experience here. And I'm—so that's a burden you must bear. If we conclude that in California you get attorney's fees on a fraud claim when it's provided for by a specific statute, not just the general notion of fraud victims must be made whole, and nobody's arguing that this attorney's fees provision in this contract is broad enough to bring in fraud damages. It's a very limited attorney's fees clause based solely on cost of collection. Doesn't that, again, inject ambiguity as to what the state court did? If it could not have awarded attorney's fees based on fraud? Well, there was a brief hiccup in your presentation, but I think I understand your question. Okay. If the court was awarding damages on breach of contract and there is an attorney's fees clause, then it would have been proper. But that's not what happened. I think we all agree that this is not contract damages that were awarded. And the issue really is— Why do we all agree on that? We don't all agree. Why do we— Oh, I'm sorry. Well, I thought we did. Because, first of all, that's the only thing that the court awarded damages for was for the fraud. It didn't say as much— How do you know that? How do you know that? Where is that finding in the record? Because you're right. If that's the finding, as you said, we have the Judicial Council form, which is ambiguous. I don't think it's ambiguous. It says what the damages are. And there's room for punitive damages, which were not awarded. I mean, other is what it would be. But the damages are exactly what was in the fraud count. And by inference, then, we're saying it's a reasonable inference that this was a fraud judgment. And that's, I believe, what the bankruptcy court found. It's not an unreasonable inference. But are we in the inference business where it's ambiguous is really the question. But isn't that also the exact amount in the prayer? Correct. Correct. But the prayer is exactly the amount of the fraud damages pled. Yes, there are other damages in the different counts. But the fraud count is the only one that had the same amount of damages that were awarded. And in your default prove up, looking at your default prove up, you included the demand letter. And the demand letter, which makes demand on account of the fraud damages, not at all directly, but very directly on the breach of contract damages, also requests $123,400.33. Is that not correct? That is correct, as I understand the record. All right. And if you look at your state court default prove up declarations, I'm looking at paragraph 29 of Ms. I think it's the Unruh declaration, I believe. Unruh? Is it Unruh or Unruh? Unruh. Unruh. She's asking for $123,400 plus interest, plus costs, plus attorney's fees. And she's calculating interest based on the note, correct? Correct. So she's not calculating. She didn't ask for interest in the complaint, or they didn't ask for interest in the complaint based on fraud, did they? They only asked for interest based on the contract claim, correct? As I read the complaint, that's correct. And they awarded interest? They did. So why doesn't that inject ambiguity as to whether there's a contract claim here? Well, again, I think we drop back to the civil code sections, which I understand the panel disagrees with me, but says you're to be made whole, and that would include… Let me stop you for a second. That's a question of damages. And California law is conceptually very clear that attorney's fees are part of costs. I just think California law comes at this in a very different way, with all due respect. I understand what you're saying, but I think California law is pretty clear that damages are damages, and attorney's fees, if awardable, are part of costs. It's just a different animal. I'm just not buying what you're selling there. Yeah. I mean, that's a huge problem for us. And the costs, they can be a cost, but only if provided for by specific statute and contract, which we don't have here. Well, I guess we'll have to agree to disagree on that point. We contend that the civil code is broad enough. Again, there's a lot of things that could have been done differently with a state court complaint. I agree with that. But here we are with what we've got. At the end of the day, we contend that there was fraud found. The judgment is properly determined to be non-dischargeable because the inventory was mortgaged. A like value was not returned. And if he remained back for trial, then the question is, well, did you return the proper value or not? Forensic accountant says, no, they didn't. There's a discrepancy. And so now we're getting down to how much did they make off with, if you will, the mortgage property. And that's what this is all about. Or whether this is simply a breach of contract claim. Well, that's the inference that's going to have to be drawn from the judgment. Sure. Sure. Understood. All right. Any other questions then for the appellee? No, thank you for taking our hard questions with humor. Thank you very much. Thank you. All right. Mr. Barsky, you have two minutes and 52 seconds. Thank you, Your Honor. I would like to emphasize that when I did raise our first motion for summary judgment, I was of the opinion, like I believe the panel might partially be, that the state court ruling was ambiguous and hard to discern. At least from my experience in Arizona, when there is a default judgment, we don't have these standard forms. And we usually put in count one the plaintiff's awarded X amount of dollars and count two X amount of dollars. So when I first saw this standard California form that we're not quite familiar with here, that was the first issue I raised to Judge Martin was, hey, this can't be necessarily decided because it includes attorney's fees. And, you know, getting into the weeds of the declarations and the complaint itself and the different supporting documents, I think it made it all the more confusing for me. But that being said, too, I do agree with the panel that the fact that this is some sort of a floor plan financing is just not supported by the record. Even the facts as alleged in the complaint, there was never a demand for my client to turn over, you know, some sort of payment of each month based upon sales or anything of that nature. So it just isn't supported by the course of performance of the party. So I think that really kind of underscores the plaintiff's attempt in this case to broaden what is otherwise a fairly narrow analysis under 523A2A and the fact that my clients really didn't receive anything of value. So I'm troubled by the damages in this. My client has never been accused of fraud in the inducement. You can see by the correspondence between the parties when this collateral was surrendered that she invited an accounting. And, you know, it's not uncommon for things to go missing in the course of a business. I moved three years ago and I still can't find things. So this to me doesn't support fraud. It doesn't support fraud. It doesn't support a really substantial judgment for fraud against my clients based upon, you know, some discrepancy on inventory accounting. So I'd like to emphasize if my client had just turned this over to a liquidator, I don't know if they could be alleged to have committed fraud. I mean, it seems to me that this is just a breach of contract issue. And I would encourage the court to remand the case or dismiss it entirely because I don't think it justifies a court of equity awarding such a significant amount, including, as Judge Martin recognized, she was troubled by the decision too. So that being said, I believe my time is up and I thank the court for its consideration. All right. Well, thanks to both of you for your good arguments. This will be your submission. Thank you. Thank you.
judges: Taylor, Lafferty, Brand